## INDIANA NATURAL GAS AND OIL COMPANY *v.* STEWART.

[No. 6,571. Filed January 6, 1910. Rehearing denied March 15, 1910.]

1. PLEADING.—*Complaint.—Theory.—Changing of, on Appeal.*—The theory of a complaint adhered to in the trial court cannot be changed on appeal. p. 556.

2. CONTRACTS.—*Gas and Oil.—Breach.—Election.—Complaint.*—A complaint for rentals, under a contract providing that the plaintiff "shall have, free of expense, gas, * * * to light and heat the dwellings on the premises, * * * free of cost, within one day from this date, or in lieu thereof, the sum of $20 yearly in advance," need not allege that the leased premises had dwellings thereon, the contract giving to the plaintiff an option to take either the gas, or the rental. pp. 556, 560.

3. CONTRACTS.—*Gas and Oil.—Breach.—Complaint.*—A complaint for rentals under a gas and oil contract for the year ending February 12, 1906, alleged to have been demanded under a contract executed February 13, 1899, the contract providing that "a well shall be drilled within two years from this date, or the royalty [$100, annually] paid to first party," is sufficient, where it shows that no well has been sunk, the date of the contract showing that the first two years have expired. p. 557.

4. CONTRACTS.—*Gas and Oil.—Construction.*—A gas and oil contract providing in clause one that a well shall be sunk within twelve months, or there shall be paid "a yearly rental of $30 in advance until said well is drilled," and in clause three, that "should gas be found, second party agrees to pay to first party $100, yearly" for each used well, and in clause four, that free gas shall be furnished to the owner, "or in lieu thereof, the sum of $20 yearly in advance," and in clause seven, that "a well shall be drilled within two years from this date, or the royalty paid to first party," gives the royalty under clause three only when a well is used, gives the royalty of $100 yearly, when no well is

sunk within two years, and gives the rental of $30 under clause one until a well is sunk, after which clause one is superseded by clause four, giving free gas, or the rental of $20, yearly. pp. 557, 558, 561.

5. CONTRACTS.—*Construction.—Parts.*—Contracts, where possible, will be construed so as to give effect to all parts thereof. p. 558.

6. CONTRACTS.—*Operation of.—"Within One Day from this Date."* —The words "within one day from this date," as used in a gas and oil contract providing that the landowner should have gas, "free of cost, within one day from this date, or in lieu thereof, the sum of $20, yearly, in advance," refer to the date of the completion of a well, and not to the date of the contract. p. 559.

7. CONTRACTS.—*Construction.—Ambiguities.*—Where a contract is ambiguous, the circumstances will all be considered as well as the construction placed thereon by the parties themselves, in determining the true meaning thereof. p. 559.

8. WORDS AND PHRASES.—*"Royalty."—Gas and Oil Contracts.*— The word "royalty," as used in gas and oil contracts, ordinarily imports a share of the product or profit reserved by the owner for permitting another to use the property. p. 560.

From Blackford Circuit Court; *Charles E. Sturgis,* Judge.

Action by Martha E. Stewart against the Indiana Natural Gas and Oil Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*W. O. Johnson, Blacklidge & Wolf* and *J. A. Hindman,* for appellant.

*A. R. Long* and *L. F. Sprague,* for appellee.

MYERS, C. J.—Appellee brought this action against the appellant to recover rentals and royalties alleged to be due on account of a certain gas lease dated February 13, 1899. That part of the lease pertinent to the questions here to be considered reads as follows:

"(3)   Should gas be found, second party agrees to pay to first party $100, yearly, payable on demand, for each and every well from which gas is transported or used off the premises, so long as the same is so transported.

(4)   First party shall have, free of expense, gas from the well or wells to use, at his own risk, to light and heat the dwellings on the premises, with pipe to

conduct the same to said dwelling, free of cost, within one day from this date, or, in lieu thereof, the sum of $20, yearly, in advance. * * *

(7) Second party may, at any time, reconvey this grant, and thereupon this instrument shall be null and void. A well shall be drilled within two years from this date, or the royalty paid to first party.''

The complaint was in two paragraphs: The first was based upon clause four of the lease, and the second was based upon clauses three and seven.

A demurrer to each of these paragraphs was overruled, and these rulings are assigned as error.

The only objection urged against the first paragraph is that it does not allege that, during the time sued for in said paragraph, there were dwellings of any kind or character on the premises leased.

The single criticism urged against this paragraph does not call for a construction of that clause of the contract upon which it was based. It proceeded upon the theory that clause four stipulated a rental which had not been paid for the years ending February 13, 1905 and 1906. Such was its theory in the lower court, and this theory must be adhered to on appeal. *Studabaker* v. *Faylor* (1908), 170 Ind. 498; *Conrad* v. *Hansen* (1908), 171 Ind. 43; *Zeller, McClellan & Co.* v. *Vinardi* (1908), 42 Ind. App. 232, and cases cited. The question, therefore, is, Was it necessary for the appellee to allege and prove that, during the time for which cash rental was demanded, dwellings were maintained upon the leased premises? Clause four stipulates that ''first party shall have,'' under certain conditions, free gas to light and heat the dwellings on the leased premises, or, in lieu thereof, the sum of $20 yearly, in advance. By this paragraph appellee sought to collect money rental alleged to be due under that clause of the contract, and not damages because of appellant's failure to furnish gas. Appellee had one of two options—free gas, or, in lieu thereof, money rental, and the latter was demanded.

Whether there were any buildings on the premises is of little importance to appellant, in case money rental was to be paid. Of course appellee was not entitled to both free gas and money rental, and it is alleged that appellant did not furnish the gas. While the allegations of fact in this paragraph are not without some imperfections, yet there is no fact wholly omitted that is necessary to state a cause of action, and it was not, therefore, error to overrule the demurrer for want of facts to this paragraph.

The second paragraph shows that appellee, at the time of the commencement of this action, and continuously since the execution of said lease, was the owner of the leased land; that no well or wells had ever been drilled upon said premises, and it does not appear that the premises had been reconveyed. Appellee sought by this paragraph to enforce the payment of $100, as royalty for the year ending February 12, 1906. It appears from a general allegation that all payments on account of royalty had been paid up to February 12, 1905. It clearly appears that more than two years had elapsed between the making of the lease and the year for which appellee sought to collect $100 as royalty. Appellant had two years in which to drill a well; but, under the terms of his contract with appellee, the $100 a year royalty, after that time, it was bound to pay whether it put down a well or not. This sum was payable on demand, and appellee alleged that on demand appellant refused to pay the royalty past due.

Appellant insists that under the lease there is nothing due to appellee for the year ending February 13, 1906, because under clause three of the lease a royalty of $100 per annum was to be paid for each gas well from which gas was transported off of the premises, and as no well or wells had been drilled, therefore, it follows that no royalty was due under the third clause of the lease, nor was there anything due under the stipulation in the seventh clause that "a well shall be drilled within two years from this

date, or royalty paid to first party," because, under this provision, if at the end of the second year no well had been drilled, then appellant was to pay royalty that would have been then due if a well had been put down, or, in other words, that it does not mean that $100 royalty each year after the second year shall be paid if a well is not drilled, for it is claimed that such a construction of the lease would destroy the first clause, which provides for a well upon the premises within twelve months from the date of the lease, or thereafter the second party agrees to pay first party "a yearly rental of $30 in advance until said well is drilled."

5. It is a familiar rule that a contract should be so construed as to render all its parts operative, if it can be done.

The questions raised affecting the sufficiency of the paragraph now under consideration seem to require from us some expression regarding the construction to be 4. placed upon the lease in question. It is evident from clause four that the gas to light and heat the dwellings on said premises was to come from the proposed well or wells. There is nothing in the lease or facts shown in this paragraph from which it can be said that the parties had in mind anything else at the time of its execution. There were no wells on the premises, nor does it appear that any gas had been found in that vicinity, nor that appellant was then engaged in transporting gas. So, by this provision, appellee was entitled to free gas for the purpose therein mentioned, or, in lieu thereof, $20 yearly in advance, but neither of these options was effective until a well was sunk on the leased premises. As we have seen by clause one, appellant was to pay a yearly rental of $30 in advance until a well was drilled. This latter provision was not limited to one or two years, but was to continue "until said well is drilled." The provision in clause one, with the provision in clause four to furnish gas, or, in lieu thereof,. to pay the sum of $20 yearly in advance, provides for a rental before a well

was drilled, and afterwards free gas or, in lieu thereof, $20 yearly in advance. Or, in other words, after a well was drilled clause four was to take the place of clause one. The words "within one day from this date" must be considered with reference to the particular subject then under consideration—the rental after gas was found —and not to the date of the contract, for it is conceded by all that a well could not be put down within one day from the date of the contract. The rule is that where a contract is ambiguous, the situation of the parties and the facts and circumstances may be considered in determining the actual intent and meaning of the parties, as expressed by the language used. The contract as made is the one to be enforced. *Indiana Nat. Gas, etc., Co.* v. *Hinton* (1902), 159 Ind. 398; *Merica* v. *Burget* (1905), 36 Ind. App. 453, and cases cited; *Kokomo Nat. Gas, etc., Co.* v. *Albright* (1897), 18 Ind. App. 151; *Uinta Tunnel, etc., Co.* v. *Ajax Gold Mining Co.* (1905), 141 Fed. 563, 73 C. C. A. 35. It is also true "that when the terms of a contract are of doubtful or ambiguous meaning, the construction placed on same by the parties, by their conduct and acts, may be shown for the purpose of arriving at their true intention. The construction placed on such a contract by the parties is entitled to great weight and may be controlling. * * * When, however, the contract is free from ambiguity and its meaning is clear, such rule is not applicable." *Ralya* v. *Atkins & Co.* (1901), 157 Ind. 331. See, also, *Scott* v. *LaFayette Gas Co.* (1908), 42 Ind. App. 614. Clause three provides for the payment of $100 yearly for each well from which gas is transported or used off of the premises. In this clause the payment of $100 is not designated as rent or royalty, but in clauses one and four the payments there provided for are designated as "yearly rental" in the former, and in the latter free gas to light and heat the dwellings on the premises, or, in lieu thereof, the sum of $20 yearly in advance. In neither of these two clauses can it be said that the

parties intended the payments to be made to be understood as a royalty, as that word is commonly understood and used in contracts of the nature of the one before us. The word "royalty," as used in the seventh clause, generally

8. has reference to "a share of the product or profit reserved by the owner for permitting another to use the property. Webster's Dict. Under the lease in question, the share of the product or the profit is represented by a yearly payment of $100 "for each and every well from which gas is transported or used off of the premises," so that clauses three and seven construed together gave to appellant two years from the date of the contract in which to drill a well, or thereafter, upon demand to pay to appellee $100 yearly. These two clauses have reference to a subject separate and apart from the matter disposed of in clause one. The parties to the lease, having by their acts and conduct given to clauses one and four a different construction from that here indicated, should and will be held to the construction which they have placed upon them. The ruling on the demurrer to the second paragraph was not erroneous.

Appellant's motion for a new trial was overruled, and this ruling is assigned as error. In support of this error, appellant insists that there was no evidence of any dwelling or dwellings upon the premises during the time covered by the first paragraph; that the decision of the court was not supported by sufficient evidence; that there was no proof that gas was in or under the premises to be developed during the year sued for in the second paragraph, or that appellant had not made tests in good faith or exercised its judgment that there was no gas to be developed.

What we have said with reference to the demurrer to the first paragraph of the complaint is a sufficient answer to appellant's first reason in support of its motion. We

2. are also of the opinion that the evidence supports the decision of the court. While there was no evidence to

the effect that gas actually existed beneath the surface
4. of the premises leased, or that appellant had not made
tests, or had not in good faith exercised its judgment
that there was no gas to be developed under the leased
premises, under the theory of each paragraph of the complaint, such evidence was unnecessary in order for appellee
to make out her case.

Judgment affirmed.