## CURLEE v. ANDERSON & PATTERSON.
(No. 9687.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 5, 1921.)

Mines and minerals ⬙⬗81—Conveyance of interest in "royalty" under lease held not to convey interest in land, effective against subsequent purchaser on foreclosure.

Where an owner of land subject to an oil and gas lease executed a conveyance of an undivided one-half interest in and to the royalties and rentals that might accrue to the owner under the lease, the conveyance designating the grantee's interest as an interest in the premises, *held*, that the conveyance did not vest in the grantee any interest in the land which could be made effective as against a subsequent purchaser under the foreclosure of a deed of trust executed by the owner; "royalty" being a share of the production or profit reserved by the owner for permitting another to use the property (citing Words and Phrases, Second Series, Royalty).

Appeal from District Court, Wichita County; H. F. Weldon, Judge.

Suit by Anderson & Patterson against W. S. Curlee. Judgment for plaintiffs, and defendant appeals. Affirmed.

Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for appellant.

Carrigan, Montgomery, Britain & Morgan, of Wichita Falls, for appellees.

DUNKLIN, J. By deed dated March 4, 1909, J. A. Kemp and Eliza Kempner sold to H. R. Kuehn a tract of land in Wichita county, in part consideration for which the purchaser executed ten promissory notes, secured by a vendor's lien on the land, each for the sum of $289.80, one of said notes maturing one year after date, and one becoming due each year thereafter. On December 14, 1912, Kuehn executed to Jack E. Kelly what is usually termed an oil and gas lease upon the land, and that instrument was duly recorded in the records of deeds of Wichita county on January 20, 1913. On January 14, 1913, Kuehn, joined by other parties, executed to W. S. Curlee a conveyance of an undivided one-half interest in and to the one-eighth royalty and rentals that might accrue to Kuehn under the oil and gas lease in favor of Kelly. That conveyance was duly recorded in the deed records of Wichita county on January 31, 1913. On January 29, 1913, J. A. Kemp and Eliza Kempner sold and transferred to S. Williams the vendor's lien notes given by Kuehn in part consideration for the sale by him. Later Williams sold nine of those notes to the Texas Land & Mortgage Company, Limited; the remaining one of the original series of ten having already been paid by Curlee. On March 18, 1913, H. R. Kuehn executed to the Texas Land & Mortgage Company, Limited, a note for the sum of $2,500 in renewal of the nine vendor's lien notes held by that company, and at the same time executed a deed of trust upon the land to secure the payment of the same, in which a trustee was named, and he was given power to sell the land in default of payment of the notes. The original trustee so named having refused to act, a substitute trustee was appointed in accordance with the powers given by the deed of trust, who sold the land at public auction in accordance with the terms of the deed of trust for the purpose of satisfying the note for which the lien was given and at that sale the Texas Land & Mortgage Company, Limited, bought in the property and a deed thereto was duly executed by the substitute trustee. On May 14, 1914, the Texas Land & Mortgage Company, Limited, by warranty deed sold the land to H. B. Patterson and G. D. Anderson, and that deed was filed for record in the deed records of Wichita county May 15, 1919. G. D. Anderson and H. B. Patterson instituted this suit against W. S. Curlee in the form of trespass to try title to recover the land so purchased by them, and in addition to a prayer for the recovery of title and possession of the land plaintiffs also prayed that any claim or pretended claim by the defendant to any interest in the land be removed as a cloud upon plaintiff's title.

In addition to a general denial and a plea of not guilty, the defendant especially pleaded the conveyance executed to him by Kuehn referred to above, and under and by virtue of that instrument he asserted title in and to one-half of all the minerals in the land in controversy. He further pleaded that he acquired such title without notice of the execution of the deed of trust in favor of the Texas Land & Mortgage Company, Limited, or sale thereunder, or of the subsequent sale to the plaintiffs, and that therefore, and for the further reason that the sale by the trustee was made without his knowledge and subsequent to the acquisition of his title, those transactions were not binding upon him. The defendant further pleaded that on December 1, 1919, he had tendered to plaintiffs the amount of the indebtedness for which the trustee's sale was made, and a further tender of that amount in court. Defendant also pleaded a cross-action against the plaintiffs for $5,000 as one-half of the proceeds which plaintiffs had realized from the sale of the mineral rights of the land in controversy.

The case was tried before the court without a jury, and from a judgment rendered in favor of the plaintiffs for title to the land, and declaring that the conveyance under

which the defendant claimed a right in the mineral in the land was a cloud upon plaintiffs' title, which was by the decree removed, defendant Curlee has prosecuted this appeal.

If the conveyance under which appellant claimed had the legal effect to vest in him title to any interest in the land, then neither that title nor the equity of redemption incident to it was precluded by the foreclosure sale through which the plaintiffs deraigned title. Hence the first question to be determined is the proper construction of that instrument. It reads as follows:

"State of Texas, County of Wichita.

"Know all men by these presents: That whereas, in a certain oil and gas lease dated the 14th day of December, A. D. 1912, H. R. Kuehn, Eddie Kuehn, Hugo Kuehn, Julius Seidlitz and' his wife, Annie Seidlitz, of Wichita county, Texas, sold, conveyed and leased unto Jack E. Kelly, of Wichita county, Texas, all of the oil and gas in and under the following described premises, reserving to themselves, the grantors, one-eighth of all the oil and gas produced and saved thereon, to wit: [Here follows description of the land.]

"Now, therefore, know all men by these presents, that we, H. R. Kuehn, Emma Kuehn, Julius Seidlitz, and Anna Seidlitz, of Wichita county, Texas, for and in consideration of the sum of one ($1.00) dollars to us cash in hand paid, the receipt of which is hereby acknowledged, and other good and sufficient consideration to us paid by W. S. Curlee, have bargained, sold, conveyed, assigned, and transferred, and by these presents do bargain, sell, convey, assign, and set over, to the said W. S. Curlee, his heirs and assigns, a one-half (½) undivided interest in and to the said one-eighth (⅛) royalty and all of the rentals that may become due in connection therewith, to have and to hold unto the said W. S. Curlee, his heirs and assigns, forever, the said interest in the above-described premises, together with all of the rights and appurtenances thereto in any manner belonging. [Here follow signatures of the grantors.]"

The oil lease from Kuehn to Kelly, referred to in the foregoing conveyance, contains the following provisions:

"This agreement, made and entered into this 14th day of December, A. D. 1912, between H. R. Kuehn and Emma Kuehn, Anna Seidlitz, J. A. Seidlitz, of Wichita county, Texas, lessors, and Jack E. Kelly, of Wichita county, Texas, lessee, witnesseth: That the lessors, in consideration of the sum of four hundred two and 50/100 ($402.50) dollars to them in hand well and truly paid by the lessee, the receipt of which is hereby acknowledged, as well as in consideration of the covenants and agreements hereinafter contained on the part of the lessee, do hereby grant, sell, convey, and lease unto the lessee all the oil and gas in and under the following described tract of land, and the possession thereof for the purpose of entering upon and operating thereon and removing therefrom said oil and gas, with the right to use sufficient water, gas, and oil from the premises to operate said property, with the right of ingress and egress at all time for such purposes, and all rights and privileges necessary for such operations; also the right to remove at any time all property, pipes, and improvements placed thereon or erected in or upon said land by the lessee, and also the right of subdividing or transferring all or any part of the rights herein conveyed and the premises hereinafter described. [Here follows description of the land in controversy.] To have and to hold the same for the term of three years from date hereof, and as much longer thereafter as oil or gas is found thereon in paying quantities.

"The lessee agrees to deliver to the lessors in tanks or pipe lines, free of charge, one-eighth part of all the oil produced and .saved from 'said land. If gas is found in paying quantities, the lessee agrees to pay the lessors one hundred fifty dollars each year in advance for the product of each well, while the same is being sold off of said premises. * * * Lessee agrees to begin operations for the drilling of a well upon the above-described premises within two years from date hereof, or thereafter pay to the lessors the sum of $1 per acre per annum, payable in advance, until a well is commenced, or until the end of the year's term hereof, as a rental and complete remuneration to lessors, for delay. When a well is once begun, the drilling thereof shall be prosecuted with due diligence until same is completed.

"Failure to perform the obligations above referred to shall render this lease null and void, except unavoidable accidents, delays, and strikes shall not work a forfeiture. Lessors are to fully enjoy and use said premises for all ' purposes not in conflict with this grant. * * *

"In consideration of the money paid at the delivery hereof and the payment of lease rentals above mentioned, lessee acquires and has the right and option to surrender this grant at any time upon the payment of the sum of one dollar and all amounts then due hereunder, and thereafter be released and discharged from all payments, obligations, and covenants herein contained, whereupon this grant shall become null and void, or to continue the same in full force and effect from quarter to quarter and from year to year, by making stipulated payments, which lessors hereby bind themselves to accept when tendered."

The instrument executed to Jack E. Kelly was supported by a substantial consideration of $402.50 cash paid to the grantors, and the effect of that instrument was to convey title to all the oil and gas in place in the tract of land in controversy. The instrument expressly so stipulates, and in connection therewith the right of possession of the land was expressly given to Kelly, for the purpose of entering upon and removing the oil and gas from the land after he had mined it; in other words, every stipulation necessary to convey title to the oil and gas in the' land was contained in the granting clause of the instrument, and those provisions amounted to a conveyance of an interest in the land itself, subject· to a defeasance by the happening of certain contingencies

stated in the instrument. Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989.

The. stipulation that the lessee would deliver to the lessors one-eighth part of all the oil produced and saved from the land, and would pay $150 for the production of each gas well in the event gas should be found in paying quantities, was designated in the preceding part of the instrument as a covenant or agreement given as a consideration for the grant. It was in no sense an exception or reservation of title to any part of the gas or oil in place in the land. The grantors' right to one-eighth of the oil produced and saved from the land could never arise until the oil was severed from the realty and had become personal property; and there was no agreement that the lessor should have any title whatever to the gas produced, even after its severance from the land, but should be paid a stipulated sum of $150 for each well in which gas should be found in paying quantities. In Tiffany on Real Property, vol. 1, p. 866, § 253, the following is said:

"The ownership of land prima facie includes the soil or earth, and also the minerals in or on the ground, and consequently the tenant in fee simple of the land is ordinarily the owner of all deposits or strata of clay, stone, iron, and other mineral substances, and such substances, while thus in place are things of a real and not a personal character. The minerals or the soil may, however, be removed from their natural position in or on the ground, and, when thus severed from the land by one authorized to make the severance, they become personalty, even though they still remain on or below the surface of the land: Provided, it seems, their removal from their natural position is with a view to their ultimate removal from the land. The part of the land consisting of minerals, or of specified minerals, may be the subject of separate ownership; this being the result either of a transfer of the land with an exception of the minerals. Such a transfer or exception of minerals in place has been held to be established when there was in terms a grant or reservation of the right to take the minerals until exhaustion."

In 8 Ruling Case Law, p. 1093, the following is said:

"The intention of the parties is presumed to be expressed by the language of the deed itself. If no reservations or exceptions are found in the deed, none should be presumed; and parol reservations or exceptions, made either at or before the making of a deed, are merged therein, and cannot be allowed to alter or modify its legal effect. The grant is not to be cut down by the subsequent reservation to an extent beyond that indicated by the intention of the parties as gathered from the whole instrument, and the general rule is that a reservation cannot be extended beyond its terms."

The rule that, when an exception or reservation in a deed is doubtful, it will be construed most favorably to the grantee, has

no application in this case, since the language to the conveyance to Jack Kelly is plain and free from ambiguity, and the same. can be said of the conveyance under which the defendant W. S. Curlee claims title. That instrument refers to the lease made to Jack Kelly, with the specific statement that the grantors had thereby "sold, conveyed, and leased unto Jack E. Kelly, of Wichita county, Texas, all of the oil and gas in and under the following described premises, reserving to themselves, the grantors, one-eighth of all the oil and gas produced and saved thereon." That language is a distinct recognition of title in Kelly to all the oil and gas in the land, but that the grantors should own one-eighth of all the gas and oil after it was severed from the land and produced and saved; and in the conveying clause an undivided one-half interest in and to the one-eighth part of the oil after it is so severed from the realty and had become personal property, together with one-half of all the rentals that might become due under the lease to Kelly, was conveyed to Curlee. And it is clear that the habendum clause, following the terms of conveyance, had reference to the interest in the personalty so conveyed and nothing else. The language, "The said interest in the above-described premises," used in the habendum clause, could not be construed as referring to any other interest conveyed by the instrument, except that specifically designated, for no other interest had been mentioned. And designation of that interest as an "interest in the above-described premises" could not be construed as an interest in the land itself, since clearly that could not be true. So to so construe it would be to hold that a clear and unambiguous grant can be enlarged by a habendum clause in a deed of conveyance, which is contrary to all the authorities. The designation of one-eighth of the oil after it is produced and saved from the land as a "royalty," as used in a lease of this character, has been defined as follows:

"A share of the production or profit reserved by the owner for permitting another to use the property." Indiana Natural Gas & Oil Co. v. Stewart, 45 Ind. App. 554, 90 N. E. 384.

In 4 Words and Phrases, Second Series, p. 418, occurs the following:

"The word 'royalty,' as employed in a coal mining lease, means the share of the profit reserved by the owner for permitting the removal of the coal, and is in the nature of rent. Kissick v. Bolton, 112 N. W. 95, 134 Iowa, 650."

The foregoing conclusions render it unnecessary to discuss any of the other assignments presented in appellant's brief, for those assignments are necessarily without merit, if our construction of the instruments described above is correct.

The judgment of the trial court is affirmed.