### HILL v. ROBERTS et al. (No. 11546.)

(Court of Civil Appeals of Texas. Fort Worth. April 10, 1926. Rehearing Denied May 8, 1926.)

1. Mines and minerals ⊚⟺55(8)—Evidence held to sustain finding that defendant, by execution of deed reserving mineral rights only as reserved in deed to him, conveyed all his interest in oil and gas royalties which he had acquired by prior deed.

Evidence *held* to sustain finding that defendant, by execution of deed reserving mineral rights only as reserved in deed to him, conveyed all rights and interests in oil and gas royalties which he had acquired by a prior deed.

2. Mines and minerals ⊚⟺48.

Oil and gas in place is part of realty,.and right to it passes with conveyance of surface, unless especially excepted.

3. Mines and minerals ⊚⟺79(1)—Word "royalty" in gas lease generally refers to share of product or profit reserved by owner for permitting another to use property.

The word "royalty," as used in a gas lease, generally refers to share of product or profit reserved by owner for permitting another to use property.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Royalty.],

4. Mines and minerals ⊚⟺79(1)—Grantor, under deed providing that oil and gas royalty should be paid to owners of surface, cannot claim royalty, because deed under which he acquired land provided that royalty should be paid to grantee.

Where deed executed by defendant to plaintiffs provided that oil and gas royalties should be paid to owners of surface, defendant cannot claim such royalty, because, in deed to him of such land, it provided that royalty should be paid to grantee.

Appeal from District Court, Archer County; H. R. Wilson, Judge.

---

⊚⟺For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by I. H. Roberts and another against R. E. Hill. Judgment for plaintiffs, and defendant appeals. Affirmed.

Kay, Akin & Smedley, of Wichita Falls, and W. E. Forgy, of Archer City, for appellant.

W. E. Wilson and Jos. H. Aynesworth, both of Wichita Falls, and J. H. Barwise, of Fort Worth, for appellees.

BUCK, J. The one issue involved in this suit is to be determined by the construction of two deeds, the first deed from the Texas Company to R. E. Hill, and the second deed from R. E. Hill to I. H. Roberts and V. E. Stampfli. The controversy between Hill on the one hand and Roberts and Stampfli on the other arises out of the wording of the last deed, in which Hill was the grantor, viewed in the light of the deed to him from the Texas Company. The question before the trial court and before us is as to whether the last-named deed conveyed to the grantees the one-eighth royalty payable by the Texas Company on the leasehold interest retained by it on the north half of 360 acres, out of the T. E. L. Company survey No. 2408, situate in Archer county. The deed from the Texas Company to R. E. Hill was a general warranty deed to the 320 acres in the survey, except for the following reservation, the words italicized being especially important:

"There is excepted from this conveyance all the oil, gas and other minerals upon, in or under, the north 160 acres of this tract, said 160 acres in the form of a parallelogram off the entire north side of said survey, with the right of ingress and egress and the use of so much of the surface as will be necessary for the purpose of drilling and operating for oil, gas and other minerals. It is distinctly understood that the Texas Company, its successors or assigns, shall never be under any obligation to drill upon said north 160 acres at any time either before or after production, but when, and if, it does drill and discover oil, gas or any other minerals. in paying quantities *there shall be paid to the grantee, his successors and assigns a royalty of 1/8 of all the oil, gas and other minerals (less any used for fuel) produced and saved from said premises. It being distinctly understood, however, that should the Texas Company, its successors or assigns fail to drill upon said north 160 acres and produce oil, gas or other minerals in paying quantities prior to the expiration of 15 years from the date of this deed, then all of the rights of the said the Texas Company, its successors or assigns in and to said minerals shall forfeit and the same shall vest in the then owner of the surface.*"

The deed from Hill to Roberts and Stampfli has the following reservation:

"There is, however, reserved from this conveyance the oil, gas and other minerals on the north one-half of said land, said reservation being in favor of the Texas Company, a corporation of Texas, its successors and assigns for a period of fifteen years from this date, said reservation, however, being the same reservation contained in deed from the Texas Company to R. E. Hill, reference to which is made for all purposes, *which reservation provides in effect that should said company, its successors and assigns fail to develop any minerals from said land within said period of fifteen years then such mineral so reserved shall revert to and become the property of the owner of the surface of said land, and with the further provision that in case any such minerals are developed, produced and saved that said company, its successors and assigns shall pay to the owner of the surface, his heirs and assigns, the usual and customary royalty for such minerals.*" (Italics ours.)

The cause was submitted to the court without the intervention of a jury, and the court rendered judgment for plaintiffs I. H. Roberts and V. E. Stampfli to recover of and from the defendant, R. E. Hill, "all of the right, title, interest, claim, demand and possession of, in and to all of the royalty interest in, to and accruing from all that certain lot, tract and parcel of land lying and being situate in the county of Archer, state of Texas, and more particularly known and described as being: All of the north ½ of Texas Immigration & Land Company survey No. 2408 and described by metes and bounds," etc.

Defendant, Hill, appealed from this judgment and at his request the court filed his findings of fact and conclusions of law, which are as follows:

### "Conclusions of Fact.

"(1) I find as a matter of fact that this suit was filed on the 6th day of March, 1925, by the plaintiffs V. E. Stampfli and I. H. Roberts against the defendant, R. E. Hill, alleging in substance that the defendant, R. E. Hill, was claiming some right, title, interest, and demand in and to certain oil and gas mining royalties in and under and arising from the north one-half of survey 2408, T. E. & L. Company survey, Archer county, Tex. The suit was to remove cloud from title and to divest all right, title, and interest out of the said defendant, and vesting it in the plaintiffs. The plaintiffs further alleging that they were holding under a certain deed made by the Texas Company to R. E. Hill, which deed was set out as Exhibit A to the plaintiffs' petition, and also under a certain deed from R. E. Hill to the plaintiffs, set out as Exhibit B to plaintiffs' petition, I refer specifically to the two deeds last above mentioned, for the terms and conditions thereof and the rights, interests, and property therein conveyed.

"(2) I find that on the 10th day of April, 1923, the Texas Company, who was then the fee-simple title holder, conveyed to R. E. Hill the lands and premises involved in this suit by general warranty deed, reserving unto itself certain mineral interests, a copy of which deed is set out in Exhibit A. This deed was promptly filed for record and is of record in the county clerk's office of Archer county, Tex.

"(3) I find that, for a valuable consideration to him in hand paid, the defendant, R. E. Hill, sold, transferred, and conveyed the above lands and premises to the plaintiffs V. E. Stampfli and

I. H. Roberts on or about the 11th day of April, 1923, a copy of which deed is set out in Exhibit B. The original was duly filed for record in the county clerk's office of Archer county, Tex.

"(4) From the evidence introduced before me, I find the negotiations leading up to the sale of this property by the defendant R. E. Hill, to the plaintiffs I. H. Roberts and V. E. Stampfli, covered a period of several weeks, and that during the negotiations various propositions and counterpropositions were had by and between the parties. I find that J. C. Crane was the agent of the respective parties for the exchange of the properties and that in pursuance of his agency he brought the parties together on several different occasions, at which meetings the question of the rights under the proposed deeds was discussed.

"(5) I find, from the evidence introduced before me, that at these various meetings whereby the respective parties were trying to get together the defendant, R. E. Hill, stated and represented to the plaintiffs Stampfli and Roberts that plaintiffs Stampfli and Roberts, under the deed from the Texas Company to the said Hill, and under the deed from the said Hill to the plaintiffs, would become the owners of all the royalty interest therein, and that the only thing that the plaintiffs would lose by virtue of the mineral reservations set out in the two respective deeds would be the possible rentals which are usually paid annually upon oil and gas mining leases, but that, if any oil or gas, either or both, were struck on the lands and premises by the Texas Company or its assigns, and if a royalty should arise and accrue therefrom, whatever it might be would, under the terms of the deed which the said Hill was proposing to deliver, accrue and become the property of the plaintiffs Stampfli and Roberts.

"(6) I find, from the evidence before me, that this particular feature of the deeds hereinbefore mentioned was dismissed a number of times, and that at each of the discussions the defendant, R. E. Hill, endeavored to impress upon Stampfli and Roberts the effect that the deed, the one which he was getting and the one which he was giving in exchanging this property to the plaintiffs, conveyed such royalty interests to the plaintiffs, and that the plaintiffs, by accepting said deed, would become the owners of the royalty interests set out and mentioned in both of the deeds.

"(7) I further find, from the evidence before me, that the plaintiffs employed counsel to look after the examination of the abstract of title which the defendant, Hill, had furnished to them for the purpose of ascertaining the title to the premises conveyed, and that counsel was present at a number of the meetings of the respective parties hereinabove referred to, and that he joined in the discussion, and from his examination of the abstract of title, and the two instruments which were then in escrow in one of the banks of the city of Wichita Falls, being there held as a means of carrying out and perfecting the exchange of properties between the plaintiffs and the defendant, and upon his examination of the two deeds and his participation in the conversations with R. E. Hill, in which the defendant stated that the plaintiffs Stampfli and Roberts would get this particular royalty, set out and mentioned in the two deeds, counsel advised the plaintiffs that, upon acceptance of the said deeds, plaintiffs would become the owners of all the royalties that might arise or might accrue under and by virtue of both deeds, and that the plaintiffs, relying upon his opinion, and upon the statements made by the said R. E. Hill, in their presence and to them and to their counsel, and upon his representations as to the effect of the two deeds, the said plaintiffs accepted the conveyances and took possession of the lands and premises and paid a valuable consideration therefor.

"(8) I further find from the evidence before me that it was not the intention of the defendant, R. E. Hill, at the time of his execution and delivery of his deed to the plaintiffs, to reserve any right, title, interest, claim, or demand in and to the royalty interest to himself, or thereafter have any right, title, interest, claim, or demand in and to said royalty interest.

"(9) I further find from the evidence before me and from the evidence of the defendant R. E. Hill, upon his cross-examination by counsel for the plaintiffs, that the said defendant was not claiming the royalty upon the trial of this cause.

"(10) I further find from the evidence introduced before me that the said defendant, R. E. Hill, made no claim to any interest, right, or title to any royalties arising from the lands and premises in controversy, until the earlier part of the year 1925, and at that time in conversation with the plaintiffs stated to them that he was not claiming any royalty or interest in the land, for he had sold it to the plaintiffs, but that, if the law would give it to him, he would take the whole premises.

"(11) I further conclude, from all the evidence before me, including the negotiations leading up to the exchange of the properties, the execution, and delivery of the deeds affecting the exchange of the properties, and the conduct of the defendant since that time and prior to the trial of this cause in the district court at Archer county, and the testimony of the defendant while on the witness stand and his manner and conduct when testifying, that the said defendant never intended to reserve any right, title, interest, claim, or demand in and to said royalties to himself, but, on the contrary, it was his intention to convey all of his right, title, and interest, claim, and demand therein and thereto to the said plaintiffs, and that, if the deed executed and delivered in furtherance of the exchange of the properties did not in effect and in law convey all of his interest therein and thereto to the plaintiffs, such lack of conveyance was on account of lack of proper descriptive words, and not in pursuance of any intention upon his part to reserve to himself any rights, title, or interest there.

"Conclusions of Law.

"(1) Bearing in mind that in the construction of a written instrument conveying lands or other estates that the court should follow out the intent of the grantor and grantee in so far as it may be determined from a reading of the instrument, and also inspection of the two deeds set out in Exhibit A and Exhibit B, respectively, to the plaintiffs' petition, and further bearing in mind that rule of law which authorizes the court to construe written conveyances most strongly against the grantor and in favor of the grantee, I conclude, as a matter of law, that the proper construction of the deed from

the Texas Company to R. E. Hill, and the deed from R. E. Hill to the plaintiffs Stampfli and Roberts, conveys all of the rights, title, interest, and estate in and to the royalty given and granted in the Texas Company deed to the plaintiffs; that is, the plaintiffs, under the deed from R. E. Hill to them, took all the fee to the surface, all the mineral estate to the south half, and all estate in the minerals of whatsoever kind or nature, to the north half, except the seven-eighths interest commonly known as the working interest, reserved in the deed specifically to the Texas Company. This conclusion of law hereinabove announced is based solely upon my construction of the two instruments taken together as the second instrument; that is, the deed from Hill to Stampfli and Roberts refers specifically to the reservation and exception therein for all intents and purposes, and it is my conclusion that under the two deeds that judgment should be entered divesting all right, title, and interest of whatsoever nature and kind out of R. E. Hill in and to the north half of the mineral estate and vesting the same in the plaintiffs Stampfli and Roberts.

"(2) I further conclude, as a matter of law, that, upon the pleadings and evidence and my conclusions of fact hereinabove found, it was the intention of the parties and so expressed and stated by the defendant, R. E. Hill, by way of an inducement to the plaintiffs, and as his then idea of the effect and purpose of the deed which he was proposing to deliver and convey to the plaintiffs Stampfli and Roberts his royalty interest which he was getting on the north half of the particular tract of land, and taking the evidence as a whole, and the conduct and demeanor of the witness while on the stand, and his reply to the direct question as to whether or not he was claiming the royalty that the true and only intention of the defendant, Hill, was to convey all of his right, title, and estate therein and thereto, and that this court, sitting as a court of equity, as well as of law, should give effect where it is demanded by the principals of justice and upright and fair dealing; that a decree should be entered upon the oral testimony and upon my conclusions of fact, divesting all right, title, and interest out of the defendant, R. E. Hill, which judgment has heretofore been rendered by this court and duly entered of record."

[1] We think the evidence amply sustains the finding of the court upon the facts, and that the findings of fact and the conclusions of law of the trial court should be adopted, which is done.

The deed from Hill to Roberts and Stampfli specifically provides:

"That in case any such minerals are developed, produced and saved that said company, its successors and assigns, shall pay to the owner of the surface, his heirs and assigns, the usual and customary royalty for such minerals."

It is in evidence that the same attorney who represented the Texas Company in the transaction between it and Hill, also, representing Hill, wrote the deed from Hill to Stampfli and Roberts, and he stated that he intended the instrument to convey to Roberts and Stampfli all the interest which the deed from the Texas Company conveyed to Hill. The second deed was signed and duly acknowledged by Hill, and it must be held that the wording of the second deed was the construction placed on the reservation clause in the first deed by Hill himself, in case any controversy might reasonably arise by reason of the provision in the first deed that the royalty on the 160 acres should be paid to the grantee instead of providing as in the second deed that the royalty should be paid to the owner of the surface.

[2,3] Oil and gas in place is a part of the realty, and the right to such oil and gas in place passes with the conveyance of the surface, unless especially excepted. Japhet v. McRae, by the Commission of Appeals, 276 S. W. 669; Humble Oil & Ref. Co. v. Kishi (Tex. Com. App.) 276 S. W. 190; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566; Jones v. O'Brien, by the Commission of Appeals, 251 S. W. 208. The word "royalty," as used in a gas lease, generally refers to "a share of the product or profit reserved by the owner for permitting another to use the property." Ind. Natural Gas Co. v. Stewart, 48 Ind. App. 554, 90 N. E. 384; 4 Words and Phrases, Second Series, p. 418.

Appellant urges that the royalty which the deed from the Texas Company to Hill provides should be paid to the grantee is in no sense an exception or reservation of the title to any part of the oil and gas in place, and that the grantee's right to one-eighth of the oil produced and saved from the land could never arise until the oil was severed from the realty and had become personal property; that, therefore, the right to the royalty was not an interest in the realty and was not conveyed by the deed from Hill to appellees. He cites in support of this contention such cases as Stephens Co. v. Mid-Kansas Oil & Gas Co., supra; Robinson v. Jacobs, 113 Tex. 231, 254 S. W. 309; Caruthers v. Leonard, by the Commission of Appeals, 254 S. W. 779; Curlee v. Anderson & Patterson, 235 S. W. 622, by this court; Queen v. Turman, 257 S. W. 1092, by the Commission of Appeals; Jones v. O'Brien, supra. We have examined the cases relied on by appellant in support of his argument, and do not find anything in any of them contrary to the views hereinabove expressed. For instance, in Curlee v. Anderson & Patterson, supra, by this court, the question involved was whether the grantee or assignee of a one-half interest in and to the royalty and rentals that might accrue to the owner under the lease had such an interest in the realty as would enable him to prevail against the subsequent purchaser under a foreclosure of a deed of trust executed by the owner. Justice Dunklin, speaking for the court, held that he could not, and said:

"The stipulation that the lessee would deliver to the lessors one-eighth part of all the oil produced and saved from the land, and would pay $150 for the production of each gas well in the event gas should be found in paying quantities, was designated in the preceding part of the instrument as a covenant or agreement given as a consideration for the grant. It was in no sense an exception or reservation of title to any part of the gas or oil in place in the land. The grantors' right to one-eighth of the oil produced and saved from the land could never arise until the oil was severed from the realty and had become personal property; and there was no agreement that the lessor should have any title whatever to the gas produced, even after its severance from the land, but should be paid a stipulated sum of $150 for each well in which gas should be found in paying quantities. In 1 Tiffany on Real Property, p. 866, § 253, the following is said:

" 'The ownership of land prima facie includes the soil or earth, and also the minerals in or on the ground, and consequently the tenant in fee simple of the land is ordinarily the owner of all deposits or strata of clay, stone, iron, and other mineral substance, and such substances, while thus in place, are things of a real and not a personal character. The minerals or the soil may, however, be removed from their natural position in or on the ground, and, when thus severed from the land by one authorized to make the severance, they become personalty, even though they still remain on or below the surface of the land: Provided, it seems, their removal from their natural position is with a view to their ultimate removal from the land. The part of the land consisting of minerals, or of specified minerals, may be the subject of separate ownership; this being the result either of a transfer of the [minerals by the owner of the land or a transfer of the land] land with an exception of the minerals. Such a transfer or exception of minerals in place has been held to be established when there was in terms a grant or reservation of the right to take the minerals until exhaustion.'

"In 8 Ruling Case Law, p. 1093, the following is said:

" 'The intention of the parties is presumed to be expressed by the language of the deed itself. If no reservations or exceptions are found in the deed, none should be presumed; and parol reservation or exceptions, made either at or before the making of a deed, are merged therein, and cannot be allowed to alter or modify its legal effect. The grant is not to be cut down by the subsequent reservation to an extent beyond that indicated by the intention of the parties as gathered from the whole instrument, and the general rule is that a reservation cannot be extended beyond its terms.' "

[4] But where the deed, as in the case of the deed from appellant to appellees, specially provides that the royalty shall be paid to the owners of the surface, we cannot see how the grantor in such deed could reasonably claim such royalty, because in a deed to him of the land it had been provided that the royalty should be paid to the grantee. We see no reason, even though the royalty should be considered as personal property, why a deed specially conveying the royalty to the grantee should not be upheld. A man selling a farm might have corn in the crib, or cut timber, or live stock, or a rental contract, and convey the title to such personal property in the deed by which he conveyed the land. Ordinarily, the right to the royalty under a mineral lease is vested in the owner of the surface, unless otherwise provided.

In the case of Wettengel v. Gormley, 160 Pa. 559, 28 A. 934, 40 Am. St. Rep. 733, the owner gave a 15-year oil lease on his farm of about 40 acres. At his decease the farm by will was cut up into three nearly equal tracts and came by devise to his three children, one to each severally. Pay wells had been drilled on one of these farms covered by the lease, and none on the other two. The court ruled that each of the three owners was entitled to share in the royalty, according to the acreage of his farm. On a second suit this division was adhered to. 184 Pa. 364, 39 A. 1118. While these cases have been followed by some courts, the majority and much better opinion, we think, is that the royalty is payable to the owner of the surface. Northwestern Ohio Natural Gas. Co. v. Ullery, 68 Ohio St. 259, 67 N. E. 494; Rymer v. South Penn Oil Co., 54 W. Va. 530, 46 S. E. 559; Pittsburg, etc., Gas Co. v. Ankrom, 83 W. Va. 81, 97 S. E. 593, 5 A. L. R. 1157; Kimbley v. Luckey, 72 Okl. 217, 179 P. 928; Fairbanks v. Warrum, 56 Ind. App. 337, 104 N. E. 983, 1141; Osborn v. Arkansas, etc., Oil Co., 103 Ark. 175, 146 S. W. 122; Pierce Oil Corp. v. Schacht, 75 Okl. 101, 181 P. 731.

It appears that in the Wettengel Case the oil and gas lease had been made by the father before his death, and the Pennsylvania court held that, inasmuch as the lessee could locate his wells wherever he might choose, all on one tract owned by one of the sons, if he willed, and thus drain from under the tracts of the other two sons any oil there existing, justice and right demanded that the three sons share equally in the royalty. This decision was especially approved in the case of Gillette v. Mitchell, 214 S. W. 619, by the Galveston Court of Civil Appeals. But the ruling of that court on the question of ownership in the royalty interest, on appeal, was especially disapproved by the Commission of Appeals in Japhet v. McRae, 276 S. W. 669. The Commission of Appeals held that the decisions by the courts of Arkansas, Indiana, Ohio, Oklahoma, and West Virginia represented the majority and the better rule. In the course of the opinion the court said that this question had been passed upon by no other court in Texas, except the two cases from the Galveston court, and the case of Hoffman v. Magnolia Petroleum Co., 260 S. W. 950, by the San Antonio Court of Civil Appeals, in which the court especially approved of the majority ruling.

We think the deed from appellant to ap-

pellee specifically conveyed the right of royalty which appellant had held prior to the execution of the deed.

Therefore the judgment of the trial court is affirmed.