*74 OPINION.
Kern :
The primary question before us is whether 80 per centum of petitioner’s gross income for the taxable years was derived from “royalties” as the word is used in section 351 (b) (1) of the Revenue Acts of 1934 and 1936, set out in the margin.[1] If it was so derived, then petitioner must be considered as a personal holding company within the meaning of those acts.
Petitioner concedes that the income derived from the oil well which it owns “is derived from royalties”, but contends that its interests in the other eight oil wells were merely participating interests and the income which petitioner derived from them pursuant to the contracts described in our findings, and constituting more than 80 per centum of its gross income, can not be considered as being derived from royal *75 ties. These Contracts were executed between petitioner and the owners of various oil leases, and provided that, in consideration of certain equipment furnished by petitioner, the owner of the lease would give petitioner a certain percentage of the proceeds received from the sale of oil produced from the well situated on the property. Is the interest in the oil thus acquired by petitioner a “royalty” within the meaning of the revenue acts ?
In construing the words contained in a statute our first resort should be to the natural, ordinary, and familiar meaning of the words used, unless Congress has definitely indicated an intention that the words should be construed otherwise. We, therefore, turn to the definitions of the word “royalty” as found in the'following dictionaries:
Webster’s New International Dictionary defines the word “royalty” as “(a) A share of the product or profit (as of a mine, forest, etc.) reserved by the owner for permitting another to use the property, (b) A duty or compensation paid to the owner of a patent or a copyright for the use of it or the right to act under it, usually at a certain rate for each article manufactured, used, sold, or the like; also, a percentage, as an output, paid to the owner of an article, especially a machine, by one who hires the use of it.”
In Black’s Law Dictionary, 3d ed., the word “royalty” is defined as “A payment reserved by the grantor of a patent, lease of a mine, or similar right, and payable proportionately to the use made ,of the right by the grantee.”
Ballentine’s Law Dictionary defines the word “royalty” as “Kent based upon the amount of mineral or oil taken from the ground; * * * As applied to oil and gas leases the term signifies the compensation provided in such a lease for the privilege of drilling on the premises for oil and gas, and consists of a share in the oil and gas produced under the lease. The royalty interest does not consist of a perpetual interest in the oil or gas as they lie in the ground, but, on the expiration of the lease, the right of the owner of the royalty expires.”
It is apparent from these definitions that the word “royalty” refers to an interest reserved by the owner in return for permission to use the property owned. To take examples from the oil industry, the interest reserved by the otvner of the fee to be paid by the lessee out of oil produced would be a royalty, as would also be the interest reserved by the owner of the leasehold to be paid by a sublessee from the oil produced. In J. T. Sneed, Jr., 33 B. T. A. 478, 482, we referred to “royalty” in the following language:
* * * Thg word “royalty” as used in a gas lease generally refers to “a share of the product or profit reserved by the owner for permitting another to use (he property.” Hill v. Roberts, 284 S. W. 246; National Gas Co. v. *76 Stewart, 90 N. E. 384. It is compensation for the privilege of drilling and producing oil and gas and consists of a share in the product. Bellport v. Harrison, 255 Pac. 52.
In the instant case the petitioner, by the contracts referred to, did not reserve an interest in the oil producing properties; it acquired such an interest for the first time. It acquired a percentage of the interest of the lessees and was to share with them in the oil produced from the leased properties. Certainly the interests of the lessees in the oil produced from the properties held by them on lease could not be considered royalties.
We conclude that the ordinary meaning of the word “royalties” does not embrace the interest held by petitioner under the various contracts with lessees of oil producing properties.
Does the word “royalties” have a technical meaning peculiar to the oil industry which would embrace petitioner’s interests? If it does, it may be that Congress was using the word in this special sense. The record in this case contains uncontradicted testimony to the effect that according to the terms used in the oil industry, petitioner’s interest was known as a “participating interest” and not as a “royalty,” and that the word “royalty” was only used to describe the interest of the owner of the fee of oil producing land reserved upon lease (“a landowner’s royalty”), and the interest of a lessee in cases of sublease (“an overriding royalty”). Therefore, we must conclude that the word “royalties” has no technical or commercial meaning different from its ordinary and normal meaning.
Nor is there anything in the revenue acts which would indicate that Congress intended this word to have any meaning other than ordinary and normal.
Petitioner here acquired by contract for a consideration an interest in the natural resources of oil producing property. This was not a royalty. Respondent lays great stress on the fact that the contracts lefer to petitioner’s interest as a “royalty interest.” However, if petitioner’s interest was not in fact a “royalty” in the sense that that term was used by Congress, it matters not what label is given it by a contract between individuals. We are concerned with the rights created by the contract, and with the labels used only to the extent that they may be helpful in a construction of the contract. Here the contract is unambiguous, and, therefore, the label attached by the scrivener to petitioner’s interest is immaterial.
For the reasons, above stated, we conclude that 80 per centum of petitioner’s income was not derived from royalties within the meaning of section 351 (b) (1), and petitioner is not a personal holding company.
*77 Respondent argues in the alternative that no depletion is allowable to petitioner in the event that we conclude, as we have concluded, that petitioner’s income is not derived from royalties. He says in his brief: “To place the income received by petitioner beyond the bounds of royalty income must of necessity remove it from its classification of income subject to depletion.” For this proposition of law he cites no authority. With it we can not agree. The right of a lessee of oil producing property to a depletion deduction can not be based upon any concept of royalty. The right to depletion depends upon an economic interest in oil in place acquired as a capital investment. See Palmer v. Bender, 287 U. S. 551; Helvering v. Bankline Oil Co., 303 U. S. 362; Cook Drilling Co., 38 B. T. A. 291; Rocky Mountain Development Co., 38 B. T. A. 1303. From an examination of the contracts introduced in evidence in this proceeding we are of the opinion that petitioner had such an interest and is entitled to depletion.
Certain provisions present in the contracts persuade us to this result. Among them are the following: “After said Second Party [petitioner] has been reimbursed as aforesaid, its interest shall be a permanent 7½% of 100% of the said production from said well”; “* * * First Party shall have the right to contract for the sale of the Second Party’s oil * * “* * * First Party * * * hereby does give the Second Party twenty-five percent (25%) of one hundred percent (100%) of the oil * * * produced from the said premises * * ; and “After said Second Party has been so reimbursed, its interest shall be ten percent (10%) of one hundred percent (100%) of the said production of the said well.” These provisions indicating the acquisition by petitioner of oil in place as a capital investment being present in the contracts before us, the decision of Rocky Mountain Development Co., supra, is not applicable to the facts of the instant proceeding.
Since we have concluded that petitioner is not a personal holding company, it follows of course that it was not obliged to file a return as such, and is not liable for the payment of any penalty for failure to do so.
Reviewed by the Board.

Decision of no deficiency will be entered.

Melloit and AbNOld dissent.

 SEC. 351. surtax ON PERSONAL HOLDING COMPANIES.
*******
(b) Definitions. — As used in this title—
(1) The term “personal holding company” means any corporation * * * if — (A) at least 80 per centum of its gross income for the taxable year is derived from royalties, dividends, interest, annuities, and (except in the case of regular dealers in stock or securities) gains from the sale of stock or securities, and (B) at any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals, * * *